

# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN

Eduardo Nolasco Saldana, Irma Marisela Rocha Ramos, Antonio Cortes Torres, Constantino Ramirez Parca, Jesus Osornio Morales, Agustin Valdes, Jorge Andres Rodriguez Castillo, Jorge Castro Arenas, Jorge Robles, Jose Calvario Perez, Jose Pedro Calderon Leal, Juan Flores Zarate, Miguel Angel Robles Flores, Pablo Jimenez Tenzia, Alfonso Mena-Rivera, Angel Juarez Cortes, Baltazar Rosas Flores, Celestino Lopez Xochipa, Ernesto Garcia Munoz, Esteban Sondoval-Grande, Fernando Rodriguez Garcia, Gasper Rodriguez Hernandez, Gregorio Guzman, Jose Armando Mirabel Morales, Jose Gabriel Garcia Gonzalez, Juan Rosas Sanchez, Luis Enrique Downham Garcia, Luis Enrique Ramirez Garduno, Miguel Guarneros Guzman, Renato Rodriguez Guzman, Refugio Pedro Perez Ortiz, Sergio Martinez Millan, Virgillio Juarez Calderon, Oscar Olarte Gonzales, Ildefonso Rafael Flores Huerta, Rosalio Carmona Montes, Jose Blanco Fernandez, Abel Castaneda Martinez, Noel Cortez Castillo, Jose L. Velasco Garcia, Gustavo Flores, Adrian Morales, Hector Feregrino, Gregorio Laguna, Jose Bautista, Felimon Baustista-guerrero, Vicente Guzman, Carlos R. Garay, Alvarado Garay, and Noe R. Garay, Rosa Maria Suarez Hoyos, German Bezies Sanchez,



Case No.

**Plaintiffs,**

v.

TORRE & BRUGLIO, INC., 179 AUBURN, LLC., FRANK TORRE JR., ANTHONY PORTER, GTO INTERNATIONAL LLC
**Defendants.**

**CLASS ACTION**
**COMPLAINT AND**
**JURY DEMAND**

| | |
|---|---|
| Miner, Barnhill & Galland<br>By: Paul Strauss<br>Pro Hac Vice<br>Attorney for Plaintiffs<br>14 W. Eric St.<br>Chicago, IL 60610<br>(312) 751-1170 | Michigan Migrant Legal Assistance Project, Inc.<br>By: Teresa M. Hendricks (P46500)<br>Attorney for Plaintiffs<br>648 Monroe Ave. N.W. Suite 318<br>Grand Rapids, MI 49503<br>(616) 454-5055 |

1

There is no other pending or resolved civil action
arising out of the transaction or occurrence alleged in the complaint.

## PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

### PRELIMINARY STATEMENT

This is a civil action brought on behalf of plaintiffs, Mexican nationals, and all similarly

situated H2B workers who performed landscaping work for defendant Torre & Bruglio, Inc. in

various locations in Michigan during the years of 2001 and 2002. Defendants Torre & Bruglio,

Inc., through GTO International LLC, and Anthony Porter recruited plaintiffs under the H-2B

Alien Labor Certification Program to perform landscaping and lawn maintenance services.

Defendant Torre & Bruglio, Inc. failed to pay the plaintiffs for all compensable hours 1) the

federal minimum wage, 2) the prevailing wage, 3) the local living wage as required under a city

ordinance, and made unlawful deductions[1] from plaintiffs paychecks.  Defendant also housed

plaintiffs in substandard housing, under untenable conditions in violation of state and local

housing laws.[2]  Plaintiffs complain that defendant violated their rights under the Fair Labor

Standards Act (FLSA), 28 U.S.C.§201 et seq., the "H2B" program of the federal Immigration

and Nationality Act, 8 U.S.C §1101 et seq., the Michigan Wages and Fringe Benefits Act

(WFBA), M.C.L.A. §408.471 et seq., the Michigan Minimum Wage Law of 1964, M.C.L.A.

§408.381 et seq., the Working at Point Away From Home Locality Act, M.C.L.A. §408.581 et

---

[1]  Plaintiffs were charged fees for sheets, mattresses, furniture, uniforms, hats, boots, utilities, and tools.  Rent was also deducted at $30.00 per week per person which meant that in at least one example, 21 men were paying a combined total of over $3000.00 a month to live in a 4 bedroom house.

[2]  A Notice of Condemnation was issued by the city of Pontiac, MI for eight houses in which plaintiffs were residing .

2

seq., and the Housing law of Michigan, M.C.L.A. §125.401 et seq., the Michigan Consumer

Protection Act, M.C.L.A. §445.901 et seq., the Detroit Ordinance §18-5-81, and Mexican Labor

Law along with suffering damages due to breach of contract, breach of warranty of fitness for

use intended, breach of warranty of habitability, unjust enrichment, and detrimental reliance.

### JURISDICTION

This court has jurisdiction of this action pursuant to the following:

(a)     28 U.S.C §1331 (Federal Question);

(b)     28 U.S.C. §1337 (Interstate Commerce);

(c)     29 U.S.C. §216(b) (FLSA);

(d)     28 U.S.C §1367 (Supplemental Jurisdiction).

### PARTIES

1.     Plaintiffs Noe Rivera Garay, Carlos Rivera Garay, Alvarado Rivera Garay, Vicente

Cuellar Guzman, Irma Marisela Rocha Ramos, Antonio Cortes Torres, and Rosa Maria

Suarez Hoyos all resided in the city of Romulus, County of Oakland, State of Michigan at

all relevant times (hereinafter **"Oakland County Plaintiffs"**).   Plaintiffs Eduardo

Nolasco Saldana, Jose Bautista, Felimon Guerrero, Adrian Perez-Morales, Gregorio

Gallaga-Laguna, Gustavo Feregrino Flores, Hector Feregrino, Constantino Ramirez

Parea, Jesus Osornio Morales, Agustin Valdes, Jorge Andres Rodriguez Castillo, Jorge

Castro Arenas, Jorge Robles, Jose Calvario Perez, Jose Pedro Calderon Leal, Juan Flores

Zarate, Miguel Angel Robles Flores, Pablo Jimenez Tenzia, Alfonso Mena-Rivera, Angel

Juarez Cortes, Baltazar Rosas Flores, Celestino Lopez Xochipa, Ernesto Garcia Munoz,

Esteban Sondoval-Grande, Fernando Rodriguez Garcia, Gasper Rodriguez Hernandez,

3

Gregorio Guzman, Jose Armando Mirabel Morales, Jose Gabriel Garcia Gonzalez, Juan Rosas Sanchez, Luis Enrique Downham Garcia, Luis Enrique Ramirez Garduno, Miguel Guarneros Guzman, Renato Rodriguez Guzman, Refugio Pedro Perez Ortiz, Sergio Martinez Millan, Virgillio Juarez Calderon, Oscar Olarte Gonzales, Ildefonso Rafael Flores Huerta, Rosalio Carmona Montes, Jose Blanco Fernandez, Abel Castaneda Martinez, Noel Cortez Castillo, Jose L. Velasco Garcia, and German Bezies Sanchez all resided in the city of Pontiac, County of Wayne, State of Michigan, at all relevant times (hereinafter **"Wayne County Plaintiffs"**). Oakland County plaintiffs and Wayne County plaintiffs will be collectively referred to as the **"named plaintiffs"** or simply **"plaintiffs"**. There are also four hundred and ninety-three (493) other members of the class for a total of five-hundred and forty-four (544) H2B workers that are employed or were employed by defendant for the years of 2001 and 2002.

2.    Plaintiffs were recruited in Mexico in 2000 and 2001. They worked or are currently working for defendant in Michigan for periods of time between April and December of 2001 and 2002.

3.    At all times relevant to this action, plaintiffs were employees of employer defendant within the meaning of the FLSA, 29 U.S.C. §203(e)(1), the Michigan Minimum Wage Law of 1964, M.C.L.A. §408.382 et seq., the Michigan Wages & Fringe Benefits Act, M.C.L.A. §408.471 et seq., and the Detroit Ordinance §18-5-81.

4.    Defendant Torre & Bruglio, Inc.(hereinafter **"employer defendant"**) is a Michigan Corporation.

4

5.    Employer defendant owns and operates a landscaping and lawn maintenance business in the State of Michigan.

6.    Upon information and belief, defendant Frank Torre Jr. is the President and Owner of Torre & Bruglio, Inc., and 179 Auburn LLC.

7.    At all times relevant to this action, defendant Torre & Bruglio, Inc. was plaintiffs' "employer" within the meaning of the Federal Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. § 203(d), the Michigan Minimum Wage Law of 1964, M.C.L.A. §408.382 et seq., and the Michigan Wages & Fringe Benefits Act, M.C.L.A. §408.471 et seq.

8.    At all times relevant to this action, employer defendant "suffered or permitted" plaintiffs to work and thus "employed" plaintiffs within the meaning of FLSA, 29 U.S.C. §203(g), Michigan Minimum Wage Law of 1964, M.C.L.A. §408.382 et seq., and Michigan Wages & Fringe Benefits Act, M.C.L.A. §408.471 et seq.

9.    At all relevant times, employer defendant was a "contractor or grantee" within the meaning of the Detroit Ordinance §18-5-81 et seq.

10.    Defendant 179 Auburn LLC (hereinafter **"landlord defendant"**) is a Michigan Corporation.

11.    At all times relevant to this action, landlord defendant was a "landlord" or "owner" as referred to in the Housing law of Michigan, M.C.L.A. §125.401 et seq.

12.    Upon information and belief, at all times relevant to this action, defendant 179 Auburn LLC was the owner and/or lessor of the properties located at:

a.    179 Auburn St.        Pontiac, MI

5

|     |     |     |
| --- | --- | --- |
| b.  | 90 S. Paddock St. | Pontiac, MI |
| c.  | 543 E. Pike St. | Pontiac, MI |
| d.  | 257 N. Perry St. | Pontiac, MI |
| e.  | 795 N. Perry St. | Pontiac, MI |
| f.  | 80 Putnam St. | Pontiac, MI |
| g.  | 119 Baldwin St. | Pontiac, MI |
| h.  | 274 Johnson St. | Pontiac, MI |
| I.  | 6744 Merriman Rd. | Romulus, MI |

13.   Defendant GTO International LLC, is a Michigan corporation.

14.   Upon information and belief, defendant Anthony Porter, is the Director of Operations for employer defendant and authorized agent for landlord defendant.

15.   Defendant GTO International LLC and defendant Anthony Porter will be collectively referred to as **"recruiter defendants"**.

## CLASS ALLEGATIONS

16.   Count I of this action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216 (b). Named plaintiffs bring this count on their own behalf and on behalf of all other current or former employees who (1) came to the United States on an "H2B" visa, (2) worked or are working for employer defendant at any time on or after the date three years prior to the filing of this lawsuit, and (3) were or are subject to the violations of the FLSA described in Count I. Plaintiffs do not bring Count I on behalf of any executive, administrative, and professional employees exempt from coverage under the FLSA.

6

17.   With respect to Count I, a collective action under the FLSA is appropriate because the employees just described are "similarly situated" to the named plaintiffs. 29 U.S.C. § 216(b); Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).

18.   Count II of this action is brought pursuant to the "H2B" program of the Immigration and Nationality Act, 8 U.S.C. § 1101 (a)(15)(H)(ii)(B). This count is brought by plaintiffs as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons similarly situated. The class plaintiffs represent consists of all past and present employees who (1) came to the United States on an "H2B" visa, (2) worked or are working for any employer defendant at any time on or after the date five years prior to the filing of this lawsuit, and (3) were or are subject to the violations of the "H2B" program of the sort described in Count II.

19.   Count III of this action is a supplemental claim brought pursuant to Michigan law. This count is brought by plaintiffs as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons similarly situated. The class plaintiffs represent consists of all past and present employees who (1) came to the United States on an "H2B" visa, (2) worked or are working for any employer defendant at any time on or after the date three years prior to the filing of this lawsuit, and (3) were or are subject to the violations of the Michigan Working at Point Away from Home Locality Act of the sort described in Count III.

20.   Count IV of this action is a supplemental claim brought pursuant to Michigan law. This count is brought by plaintiffs as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons similarly situated. The class plaintiffs represent

consists of all past and present employees who (1) came to the United States on an "H2B" visa, (2) worked or are working for any employer defendant at any time on or after the date three years prior to the filing of this lawsuit, and (3) were or are subject to the violations of the Michigan Minimum Wage Law of 1964 of the sort described in Count IV.

21.    Count V of this action is a supplemental claim brought pursuant to Michigan law. This count is brought by plaintiffs as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons similarly situated. The class plaintiffs represent consists of all past and present employees who (1) came to the United States on an "H2B" visa, (2) worked or are working for any employer defendant at any time on or after the date three years prior to the filing of this lawsuit, and (3) were or are subject to the violations of the Michigan Wages and Fringe Benefits Act of the sort described in Count V.

22.    Count VI of this action is a supplemental claim brought pursuant to Michigan law. This count is brought by plaintiffs as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons similarly situated. The class plaintiffs represent consists of all past and present employees who (1) came to the United States on an "H2B" visa, (2) worked or are working for any employer defendant at any time on or after the date three years prior to the filing of this lawsuit, and (3) were or are subject to the violations of the Housing Law of Michigan of the sort described in Count VI.

23.    Count VII of this action is a supplemental claim brought pursuant to Michigan law. This count is brought by plaintiffs as a class action pursuant to Rule 23 of the Federal Rules of

8

Civil Procedure, on behalf of all persons similarly situated. The class plaintiffs represent consists of all past and present employees who (1) came to the United States on an "H2B" visa, (2) worked or are working for any employer defendant at any time on or after the date six years prior to the filing of this lawsuit, and (3) were or are subject to the violations of the Michigan Consumer Protection Act of the sort described in Count VII.

24. Count VIII of this action is a supplemental claim brought pursuant to Michigan law. This count is brought by plaintiffs as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons similarly situated. The class plaintiffs represent consists of all past and present employees who (1) came to the United States on an "H2B" visa, (2) worked or are working for any employer defendant at any time on or after the date three years prior to the filing of this lawsuit, and (3) were or are subject to the violations of the Detroit Living Wage Ordinance of the sort described in Count VIII.

25. Count IX of this action is a supplemental claim for breach of contract, brought pursuant to Michigan law. This count is brought by plaintiffs as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons similarly situated. The class plaintiffs represent consists of all past and present employees who (1) came to the United States on an "H2B" visa, (2) worked or are working for any employer defendant at any time on or after the date six years prior to the filing of this lawsuit, and (3) were or are affected by breaches of contract of the sort described in Count IX.

26. Count X of this action is a supplemental claim brought for breach of the warranty of habitability pursuant to Michigan law. This count is brought by plaintiffs as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all

persons similarly situated. The class plaintiffs represent consists of all past and present employees who (1) came to the United States on an "H2B" visa, (2) worked or are working for any employer defendant at any time on or after the date three years prior to the filing of this lawsuit, and (3) were or are affected by the breaches of warranty of habitability of the sort described in Count X.

27.  Count XI of this action is a supplemental claim brought for breach of warranty of fitness for the use intended, pursuant to Michigan law. This count is brought by plaintiffs as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons similarly situated. The class plaintiffs represent consists of all past and present employees who (1) came to the United States on an "H2B" visa, (2) worked or are working for any employer defendant at any time on or after the date three years prior to the filing of this lawsuit, and (3) were or are affected by the breaches of warranty of fitness for the use intended of the sort described in Count XI.

28.  Count XII of this action is a supplemental claim brought pursuant to Mexican law. This count is brought by plaintiffs as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons similarly situated. The class plaintiffs represent consists of all past and present employees who (1) came to the United States on an "H2B" visa, (2) worked or are working for any employer defendant at any time on or after the date one year prior to the filing of this lawsuit, and (3) were or are subject to the violations of Mexican Law of the sort described in Count XII.

29.  Count XIII of this action is a supplemental claim brought for unjust enrichment pursuant to Michigan law. This count is brought by plaintiffs as a class action pursuant to Rule 23

10

of the Federal Rules of Civil Procedure, on behalf of all persons similarly situated. The class plaintiffs represent consists of all past and present employees who (1) came to the United States on an "H2B" visa, (2) worked or are working for any employer defendant at any time on or after the date three years prior to the filing of this lawsuit, and (3) were or are affected by the failure to have been compensated for the benefit they conferred of the sort described in Count XIII.

30.     Count XIV of this action is a supplemental claim brought for unjust enrichment pursuant to Michigan law. This count is brought by plaintiffs as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons similarly situated. The class plaintiffs represent consists of all past and present employees who (1) came to the United States on an "H2B" visa, (2) worked or are working for any employer defendant at any time on or after the date three years prior to the filing of this lawsuit, and (3) were or are affected by the reliance upon the promises made by the employer defendant and recruiter defendant of the sort described in Count XIV.

31.     Certification of a class of persons who may receive relief pursuant to counts II through XIV is appropriate pursuant to Fed. Civ. P. 23(b)(2) and/or 23(b)(3) because:

    a.     the class is so numerous that it is impractical to bring all its members before this Court;

    b.     there are questions of law and fact common to the class;

    c.     the named plaintiffs' claims are typical of those of the class;

    d.     the named plaintiffs will fairly and adequately protect the interests of the class; and plaintiffs have retained counsel experienced in matters of this type;

11

e.   the defendants have acted and refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with the respect to the class as a whole. Plaintiffs are asking the court to enjoin defendants' practices that violate the FLSA, the federal "H2B" program, Michigan law, or Mexican law. If this relief is granted it will benefit the entire class; and

f.   questions of law common to the members of the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Testimony and evidence about defendants practices will affect and apply to the claims of all class members. Purely individual questions will be restricted to damages questions should liability be established. If no class action is certified, it will make it impractical for individual class members to pursue relief, or may lead to a large number of separate lawsuits, all of which will rely on the same kind of proof and take roughly the same amount of time, causing an unnecessary burden on the courts.

## FACTS COMMON TO ALL COUNTS

32.   Employer defendant applied for and received H-2B Alien Certification status for the period of March 1, 2001 to December 1, 2001 receiving two hundred and twenty-five (225) foreign workers.

33.   Employer defendant applied for and received H-2B Alien Certification status for the period of March 10, 2002 to November 30, 2002, receiving three hundred and nineteen (319) foreign workers.

**Recruitment in 2000 and 2001**

34.   Upon information and belief, employer defendant, through their recruiter defendants, recruited plaintiffs to work as landscape laborers under H-2B visa status in the State of Guanajuato, Country of Mexico, and the State of Puebla, Country of Mexico.

35.   Upon information and belief, employer defendant, through its agents, promised wages ranging from nine to twelve dollars per hour ($9-$12/hr) with time and half for any hours over 40 hours per week.

36.   Upon information and belief, employer defendant also promised plaintiffs they would be working approximately 50 hours per week throughout the whole term of the contract.

37.   Upon information and belief, employer defendant also promised to provide suitable living arrangements for plaintiffs, stating specifically that there would be four persons for every one apartment.

38.   Upon information and belief, plaintiffs signed agreements stating the terms and conditions as outlined above while still in Mexico.

39.   Plaintiffs were brought to Michigan in April, 2001, and April, 2002, to work for the employer defendant.

40.   Upon information and belief, plaintiffs were forced to sign new contracts, which were contrary to the ones previously signed when they arrived in Michigan for orientation with employer defendant.

13

41.   Upon information and belief, plaintiffs paid visa fees, travel fees and subsistence during travel from their residence in Mexico to employer defendant in Michigan.

## Wages-Transportation

42.   Employer defendant provided daily transportation for plaintiffs from plaintiffs' residence in Michigan to the their headquarters to retrieve equipment necessary for performing assigned duties.

43.   Upon information and belief, employer defendant did not pay plaintiffs for time spent traveling to the employer defendants' headquarters to pick up equipment and tools necessary for performing their duties.

44.   Upon information and belief, employer defendant had plaintiffs punch in upon their arrival at the headquarters to prepare equipment, but then deducted this time spent preparing the equipment and machinery.

45.   Employer defendant also provided daily transportation for plaintiffs to and from the assigned work sites.

46.   Upon information and belief, plaintiffs spent anywhere from fifteen minutes to an hour traveling from the employer defendants' office to their assigned work sites.

47.   Upon information and belief, employer defendant did not pay all plaintiffs for time spent traveling from their headquarters to the assigned work site and for the return trip.

## Wages - Unpaid

48.   Upon information and belief, employer defendant did not pay plaintiffs the federal minimum wage during the first couple of months of employment in 2001.

14

49. Plaintiff Noe Rivera Garay did not receive his pay check for hours worked during the period ending September 30, 2001.

50. Plaintiff Agustin Valdes did not receive his paycheck for hours worked during the period ending Nov. 11, 2001.

51. Upon information and belief, plaintiffs were not paid for all compensable hours worked in 2001 and 2002.

52. Employer defendant owes plaintiffs for these unpaid wages earned.

**Wages - Deductions**

53. Employer defendant made deductions from plaintiffs' paychecks for rent, mattresses, sheets, furniture, uniforms, boots, hats, utilities, and tools.

54. Employer defendant made these deductions without plaintiffs' express written consent for *each* paycheck from which deductions were made.

**Housing - Conditions and Deductions**

55. Plaintiffs received housing from landlord defendant during their employment with employer defendant.

56. At all relevant times, plaintiffs were living in housing units controlled by the employer defendant and landlord defendant.

57. Plaintiffs were assigned to the housing.

58. Plaintiffs residing at 257 Perry St. in the city Pontiac, Michigan specifically requested permission to leave and find their own housing, but were denied.

59. Plaintiffs were not allowed to move to housing that was not owned or controlled by employer defendant or landlord defendant.

60.    Plaintiffs were forced to live in overcrowded, substandard housing. Specifically:

a.    the Wayne county plaintiffs, were forced to live with up to twenty one individuals in a four bedroom house, with one bathroom. In some instances, the Wayne county plaintiffs were forced to sleep in the living room, patio, and even a closet due to lack of available space.

b.    The Oakland county plaintiffs lived in apartments leased from employer defendants. They were placed in groups of eight individuals per two bedroom apartment.

61.    Employer defendant deducted thirty dollars a week from plaintiffs' pay for this housing, without the express written consent of plaintiffs for *each* paycheck from which deductions were made.

62.    The housing failed to meet minimum health and safety standards required by the city of Romulus, Michigan, the city of Pontiac, Michigan, and the State of Michigan.

63.    Upon information and belief, the employer defendant and landlord defendant had been notified by the City of Romulus that the apartments provided to the plaintiffs were in violation of local and state housing law and those violations needed to be remedied immediately.

64.    Upon information and belief, the employer defendant and the landlord defendant, through their agents, told the Oakland County plaintiffs, during a mandatory company meeting, that because the plaintiffs complained to their attorneys and the city of Romulus about overcrowding, the plaintiffs would have to:

a.    sign new lease agreements directly with the apartment complex owners, or

16

     b.    the plaintiffs would be evicted.

**Employment Contract**

65.    Upon information and belief, employer defendant did not provide plaintiffs with hours of employment as promised in their employment contracts.

66.    Upon information and belief, employer defendant did not pay plaintiffs the wages promised in the employment contract that induced plaintiffs into traveling to Michigan to work.

67.    Upon information and belief, employer defendant and landlord defendant did not provide suitable housing as promised under the employment contract.

**Retaliatory discharge/discrimination**

68.    Upon information and belief, plaintiff Eduardo Nolasco Saldana was terminated from his employment by employer defendant for having asserted his legal rights with regard to the allegations listed in this complaint.

69.    Upon information and belief, plaintiff Constantino Ramirez Parea, was suspended from work by employer defendant for having asserted his legal rights with regard to the allegations listed in this complaint, including but not limited to his unwillingness to disclose the identity of clients who had signed with an attorney.

## COUNT I

### Violation of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et. seq.

70.    Plaintiffs incorporate by reference paragraphs 1 through 69.

71.    The FLSA requires an employer to pay employees the federally mandated minimum wage of $5.15 per hour. 29 U.S.C. §206.

17

72. Under the FLSA, an employer may not make deductions from an employees' wages if those deductions will drive the employees' wage below the minimum wage. 29 C.F.R §531.35. See, e.g. Castillo v. Case Farms of Ohio, Inc., 96 F.Supp. 2d 578, 637-40 (W.D. Tex. 1999) (unlawful deductions for necessary equipment, supplies, and substandard housing).

73. Employer defendant violated this subsection by making unlawful deductions that drove plaintiffs' effective wages below the applicable minimum wage.

74. Employer defendant violated this section by failing to pay the plaintiffs the minimum wage for all hours worked.

75. Under Duffy v. Gainey Transportation Services, Inc., 193 Mich. App. 221, at 224, 484 N.W.2d 7,at 9 (1992), the court upheld a decision by the Michigan Department of Labor (MDOL) requiring "a separate written consent by the employee for each paycheck from which a deduction is made." The Michigan Department of Labor was interpreting M.C.L.A §408.477(2) which requires "written consent from the employee for *each* wage payment subject to the deduction...."(Emphasis added)

76. Employer defendant did not obtain written authorization for *each* paycheck from which deductions were made.

77. The FLSA, 29 U.S.C. §207, provides that an employer pay an employee one and a half times the employee's regular rate for hours in excess of forty hours per week.

78. Employer defendant did not pay plaintiffs at a rate of one and a half times their regular rates for hours worked in excess of forty hours.

79.   The FLSA, §218(a), does not allow deductions to be made from an employees' paycheck for housing that violates federal, state or local law. See 29 CFR §531.31.  See also Soler v. G&U, Inc., 768 F.Supp. 452 (S.D.N.Y. 1991)(housing deductions made were in violation of the Fair Labor Standards Act due to overcrowding in violation of state law); Osias v. Marc, 700 F.Supp. 842, at 845 (D.Md. 1988)(the cost of substandard housing was not allowed to be credited to employer); Strong v. Williams, 1980 WL 8134 at page 5,( M.D. Fla. 1980).

80.   Employer defendant violated the FLSA by deducting rent for housing that was in violation of state and local housing laws.

81.   The FLSA, 29 U.S.C. §215(a)(3), prohibits an employer from discharging or discriminating against an employee for having asserted his legal rights with regard to violations of this act.

82.   Employer defendant violated the FLSA by discharging plaintiff Eduardo Nolasco Saldana from employment for having asserted his legal rights under the act.

83.   Employer defendant violated the FLSA by suspending and/or otherwise discriminating against plaintiff Constantino Ramirez Parea for having asserted his legal rights under the act.

84.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to their unpaid minimum wages, unpaid overtime compensation, plus an additional equal amount in liquidated damages, costs of court, and reasonable attorney fees.

## Count II

### Violation of the H2B Program of the Federal Immigration and Nationality Act

85.    Plaintiffs incorporate by reference paragraphs 1-69.

86.    An employer may hire temporary foreign workers to engage in non-agricultural labor under the H2B program. 8 U.S.C. §1101(a)(15)(H)(ii)(B).

87.    An employer must certify where the workers will work and what work they will be doing. Under the H2B program, "[a] temporary labor certification is valid only for the number of aliens, the occupation, the area of employment, the specific activity, the period of time, and the employer specified in the certification." Moreover, "[a] temporary labor certification is limited to one employer's specific job opportunity; it may not be transferred from one employer to another." 60 Federal Register 7216, 1995 WL 44434, §VIII.

88.    Acting as agents of the employer defendant, the recruiter defendants in this case recruited plaintiffs to work for employer defendant doing landscaping and lawn maintenance.

89.    Upon information and belief, the employer defendant made some plaintiffs work in the kitchen of a golf course restaurant in the city of Canton, Michigan.

90.    By transferring H2B workers from work in activities related to landscaping and lawn maintenance, the employer defendants violated the rules of the H2B program.

91.    Employer defendant failed to pay plaintiffs the prevailing wage as required under the rules of the H2B program.

## COUNT III

### Violation of the Working at Point Away From Home Locality Act, M.C.L.A. §408.581 et seq.

92.     Plaintiffs incorporate by reference paragraphs 1-69.

93.     The Working at Point Away from Home Locality Act, M.C.L.A. §408.581 et seq, states that the terms and conditions of employment in an offer of employment made to a person "at a point away from his or her home locality" shall be in writing.

94.     Employer defendant, through recruiter defendants, induced plaintiffs to accept the offer to work "by promise of wages or other valuable consideration...at a point away from [their] home locality" and failed to specify in writing the terms and conditions of employment as it pertained to the housing arrangements and payroll deductions for such housing at the point of recruitment. M.C.L.A. §408.581 et seq.

95.     Employer defendant, through recruiter defendant, also misrepresented the conditions of employment as they pertained to the wages offered, the type of work to be performed, and the payroll deductions for the housing and other miscellaneous items.

96.     The Working at a Point Away from Home Locality Act, M.C.L.A §408.581 et seq., provides that if any misrepresentation is made as to any of the conditions of employment covered under the act, the employer "shall be liable to pay to the person injured by such misrepresentation, the full amount of damage sustained."

## COUNT IV

### Violation of the Michigan Minimum Wage Law of 1964, M.C.L.A. §408.381 et seq.

97.     Plaintiffs incorporate by reference paragraphs 1-69.

21

98.   The Michigan Minimum Wage Law of 1964, M.C.L.A. §408.383, makes it unlawful for an employer to pay an employee less than what is prescribed in the statute.

99.   The minimum hourly rate set by M.C.L.A. §408.384(c) as of September 1, 1997 is $5.15.

100.  Employer defendant violated the Michigan Minimum Wage Law by making unlawful deductions that resulted in reducing the actual payment of wages to plaintiffs below the minimum wage. See e.g., Castro v. Dryden Farms, Inc., 79 Mich.App. 633, at 637, 263 N.W.2d 22 at 24 (1977) (impermissible excessive deductions drove wages paid below minimum wage). See also, Duffy v. Gainey Transportation Services, Inc., 193 Mich. App. 221, at 224, 484 N.W.2d 7,at 9 (1992) (requiring separate written consent for *each* paycheck from which deductions where made; in this case the deductions were made without the required consent for each paycheck).

101.  Employer defendant failed to pay plaintiff Noe Rivera Garay the minimum wage for hours worked for the period ending September 20, 2001.

102.  Plaintiff Agustin Valdes did not receive his paycheck for hours worked during the period ending Nov. 11, 2001.

103.  The Michigan Minimum Wage Law, M.C.L.A. §408.384 (a)(1), requires that an employer pay its employees one-and-a-half times their regular hourly rate for the hours worked in excess of forty hours in each work week.

104.  Employer defendant did not pay plaintiffs one-and-a-half times their regular hourly rate for the hours worked in excess of forty hours.

105.  The Michigan Minimum Wage Law, M.C.L.A. 408.393(1)(a), provides that as a remedy for a violation of the Act, an employee is entitled to "...the difference between the

amount paid and the amount that...should have been paid...and an equal additional amount as liquidated damages together with costs and such reasonable attorney fees."

## COUNT V

### Violation of Michigan Wages & Fringe Benefits Act, M.C.L.A. §408.471 et seq.

106. Plaintiffs incorporate by reference paragraphs 1-69.

107. The Michigan Wages & Fringe Benefits Act, M.C.L.A. §408.472, informs an employer as to the required times for payment of wages earned, a.k.a. "pay periods."

108. The Michigan Wages & Fringe Benefits Act, M.C.L.A. §408.472, makes it unlawful for an employer not to pay an employee within two weeks after wages have been earned.

109. Plaintiff Noe Rivera Garay did not receive his last pay check for the period ending September 30, 2001.

110. Defendant violated the Michigan Wages & Fringe Benefits Act by failing to pay wages and failing to pay wages when due.

111. The Michigan Wages & Fringe Benefits Act, M.C.L.A. §408.488(1), provides that where a violation of the Act is found, the employer is to pay the employee the wages due with interest at a rate of 10% per annum for wages not paid from the time employer is notified of action against him until actual payment is received by the employee.

112. Where wages were intentionally withheld, not pursuant to any contract or agreement, the Michigan Wages & Fringe Benefits Act, M.C.L.A. §408.488(2), provides a remedy of double the damages and an award of attorney fees.

23

## COUNT VI

### Violation of the Housing Law of Michigan, M.C.L.A. §125.401 et seq.

113.   Plaintiffs incorporate by reference paragraphs 1-69.

114.   The Housing Law of Michigan (Housing Law), M.C.L.A §125.401 et seq., proscribes the minimum requirements necessary for the promotion of "the health, safety, and welfare of the people" with regards to dwellings.

115.   The Housing Law applies to every city with a population of 100,000 or more or to any city or village that has adopted the provisions by resolution or majority vote.

116.   The city of Pontiac has adopted the Housing Law of Michigan in Pontiac City Code §22-761.

117.   The employer defendant and landlord defendant provided housing to the plaintiffs that was in violation of the Housing Law and the Pontiac City Code.

118.   Plaintiffs gave notice to employer and landlord defendant of these violations on July 16, 2001, September 5, 2001, June 17, 2002, July 22, 2002, July 23, 2002, July 30, 2002, and August 5, 2002.

119.   The employer defendant and landlord defendant failed to remedy the violations after adequate notice was given by plaintiffs.

120.   The employer defendant and landlord defendant is liable to plaintiffs for damages actually suffered as a result of the violations.  M.C.L.A. §125.536.

## COUNT VII

### Violation of the Michigan Consumer Protection Act, M.C.L.A. §445.901 et seq.

121.   Plaintiffs incorporate by reference paragraphs 1-69.

24

122.   Employer defendant and landlord defendant engaged in trade or commerce when they "offered property for rent" to plaintiffs "primarily for personal, family, or household purposes" within the meaning of the Michigan Consumer Protection Act, M.C.L.A. §445.901(d).

123.   The actions of employer defendant and landlord defendant constitute unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce and are unlawful:

    a.   Failure to provide a habitable, safe, and appropriate residential home to plaintiffs. M.C.L.A. §445.903 (s), (x), (y), (z)(bb) and (cc),.

    b.   Failure to repair and/or maintain the residential home leased to plaintiffs in a habitable, safe and appropriate condition, despite numerous complaints by plaintiffs. M.C.L.A. §445.903(p), (t), (z).

    c.   Failing to reveal a material fact to the plaintiffs regarding the reasons which made it necessary for them to enter into new lease agreements. M.C.L.A. §445.903 (s), (t), (x), and (bb).

    d.   Causing confusion or misunderstanding as to the legal rights, obligations, or remedies that plaintiff had available to them in order to coerce plaintiffs into signing new lease agreements. M.C.L.A. §445.903 (n)

124.   As a result of employer defendants' and landlord defendants' acts or omissions in violation of the Michigan Consumer Protection Act, M.C.L.A. §445.901 et seq., plaintiffs are entitled to actual damages or $250.00 per violation, whichever is greater, plus costs and attorney fees.

25

## COUNT VIII

### Violation of the Detroit Living Wage Ordinance

125.   Plaintiffs incorporate by reference paragraphs 1-69.

126.   The plaintiffs performed the services required under the contracts the employer defendant held with the city of Detroit.

127.   The employer defendant failed to pay plaintiffs the minimum wage required under the ordinance.

128.   As a result, the plaintiffs are entitled to receive an amount equal to the difference between the wages actually received and what they should have received, along with reasonable attorney fees, and costs. Detroit Ordinance § 18-5-85.

## COUNT IX

### Breach of Contract

129.   Plaintiffs incorporate by reference paragraphs 1-69.

130.   The employer defendant recruited plaintiffs to work in Michigan doing landscaping and lawn maintenance.

131.   At the time of recruitment, employer defendant, through recruiter defendants, promised plaintiffs that in exchange for traveling to Michigan to work for employer defendant, plaintiffs would

    a.   earn wages ranging from $9.00 to $12.00 per hour,

    b.   get time and half for all hours worked over 40 hours per week,

    c.   work at least fifty hours a week, and

    d.   be provided one apartment for every four individuals.

132.    Plaintiffs agreed to these terms.  Based on this agreement and accepting the employer defendants' offer of employment, plaintiffs left their families and traveled from Mexico to the employer defendants' place of business in Michigan and presented themselves for work.

133.    The employer defendant paid plaintiffs only $7.00 to $9.00 per hour.

134.    Employer defendant failed to provide plaintiffs with the 50 hours per week.

135.    The employer defendant did not provide 4 workers to an apartment.

136.    The employer defendant breached the employment contract by failing to comply with the promised terms and conditions of employment.

137.    The employer defendant is therefore liable to the plaintiffs for actual, incidental, and consequential damages.

## COUNT X

### Breach of Warranty of Habitability

138.    Plaintiffs incorporate by reference paragraphs 1-69.

139.    Plaintiffs gave landlord defendants and employer defendants notice of the needed repairs and the violations of law with regard to the housing provided as set forth in paragraph 116.

140.    Landlord defendants' failure to make repairs and/or maintain the residential property in which plaintiffs were residing constitutes a wilful or negligent breach of the warranty of habitability.

141.    As a result, plaintiffs are entitled to actual and consequential damages, costs, and attorney fees.

## COUNT XI

### Breach of Warranty of Fitness for the Use Intended

142.   Plaintiffs incorporate by reference paragraphs 1-69.

143.   Plaintiffs gave landlord defendant and employer defendant notice of the needed repairs
       and the violations of law with regard to the housing provided as set forth in paragraph
       116.

144.   Landlord defendants' failure to make repairs and/or maintain the residential property in
       which plaintiffs were residing constitutes a wilful or negligent breach of the warranty of
       fitness for the use intended.

145.   As a result, plaintiffs are entitled to actual and consequential damages, costs, and
       attorney fees.

## COUNT XII

### Violation of Mexican Labor Laws

146.   Plaintiffs incorporate by reference paragraphs 1-69.

147.   Mexican law provides that an employer that recruits workers in Mexico for employment
       in the United States must pay the worker's recruitment, visa, and travel costs.

148.   Specifically, the Mexican Federal Labor law ("Ley Federal de Trabajo"), Article 28,
       Section I(b), provides that employers who hire Mexican workers to work outside of
       Mexico are exclusively responsible for

> the costs of transport, repatriation, travel to the place of origin and meals
> of the employee and his family (where applicable) and all expenses
> arising out of crossing frontiers and complying with the regulations
> respecting immigration....The worker shall receive in full the
> renumeration to which he is entitled, and no amount shall be deducted
> from it for any of the above reasons.

28

149.   This provision of Mexican law applies in this case because employer defendant – through the recruiter defendants – made offers of employment to the plaintiffs in Mexico.

150.   This court has supplemental jurisdiction to enforce this provision of Mexican law.  See, e.g., Randall v. Arabian American Oil Co., 778 F.2d 1146 (5th Cir. 1985).

151.   The employer defendant did not pay plaintiffs transport, repatriation, travel, meals, or visa fees.

152.   As a result plaintiffs violated Mexican law, causing plaintiffs to lose substantial income.

## COUNT XIII

### Unjust Enrichment

153.   Plaintiffs incorporate by reference paragraphs 1-69.

154.   Plaintiffs conferred a benefit to the employer defendant for the work provided by plaintiffs during their period of employment.

155.   Plaintiffs conferred a benefit to the defendant in the form of amounts paid for rent and fees for setup, sheets, mattresses, uniforms, boots, tools, furniture, hats, and utilities. These amounts were unlawfully deducted from plaintiffs' paychecks.

156.   Pursuant to Michigan common law, it is inequitable for employer defendant to retain the benefit of the work performed without appropriately compensating plaintiffs and for the employer defendant to retain the benefits of the amounts unlawfully deducted from plaintiffs paychecks.  See Michigan Educational Employees Mutual Insurance v. Morris, 460 Mich. 180, at 197, 596 N.W.2d 142, at 151 (1999).

157.   As a result of the employer defendants' conduct, plaintiffs have suffered a loss of substantial income.

29

## COUNT XIV

### Detrimental Reliance

158.    Plaintiffs incorporate by reference paragraphs 1-69.

159.    Plaintiffs relied on employer defendants' recruitment promises to pay the following:

    a.    earn wages ranging from $9.00 to $12.00 per hour,

    b.    get time and half for all hours worked over 40 hours per week,

    c.    work at least fifty hours a week, and

    d.    be provided one apartment for every four individuals.

160.    In reliance on these promises, plaintiffs traveled to Michigan to work with employer defendant and incurred expenses of transport, repatriation, travel, meals and visa fees.

161.    Employer defendant did not pay or reimburse plaintiffs for these costs.

162.    As a result, plaintiffs have suffered a loss.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs' requests the following relief:

1.    The actions of the defendants complained of herein be adjudicated, decreed, and declared a breach of defendants' obligations under the Fair Labor Standards Act (FLSA), 28 U.S.C.§201 et seq., the "H2B" program of the federal Immigration and Nationality Act, 8 U.S.C §1101 et seq., the Michigan Wages and Fringe Benefits Act (WFBA), M.C.L.A. §408.471 et seq., the Michigan Minimum Wage Law of 1964, M.C.L.A. §408.381 et seq., the Working at Point Away From Home Locality Act, M.C.L.A. §408.581 et seq., and the Housing law of Michigan, M.C.L.A. §125.401 et seq., the Michigan Consumer Protection Act, M.C.L.A. §445.901 et seq., the Detroit Ordinance §18-5-81 et seq., breach of contract,

breach of warranty of fitness, breach of warranty of habitability, unjust enrichment, detrimental reliance, and Mexican Labor Law;

2. Defendants pay damages in an amount to be determined at trial for these violations;

3. Employer defendant pay an equal amount in liquidated damages pursuant to the Fair Labor Standards Act (FLSA), 28 U.S.C.§201 et seq. and the Michigan Minimum Wage Law of 1964, M.C.L.A. §408.381 et seq.;

4. Employer defendant pay an amount to be determined at trial equal to $250.00 per violation or actual damages whichever is greater pursuant to the Michigan Consumer Protection Act, M.C.L.A. §445.901 et seq.;

5. Employer defendant pay double damages pursuant to the Michigan Wages and Fringe Benefits Act (WFBA), M.C.L.A. §408.471 et seq.;

6. Employer defendant pay reasonable attorney fees pursuant to the Fair Labor Standards Act (FLSA), 28 U.S.C.§201 et seq., the Michigan Consumer Protection Act, M.C.L.A. §445.901 et seq., Michigan Wages and Fringe Benefits Act (WFBA), M.C.L.A. §408.471 et seq., the Michigan Minimum Wage Law of 1964, M.C.L.A. §408.381 et seq., and the Detroit Ordinance §18-5-81 et seq.;

7. Defendants pay prejudgment interest to plaintiffs on these damages;

8. The Court grant such other and further relief as the Court may deem just or equitable.


Respectfully submitted,

By: _Paul Strauss by_            By: _Teresa M. Hendricks_
Miner, Barnhill & Galland _permission_   Michigan Migrant Legal
By: Paul Strauss      _Hendricks_      Assistance Project, Inc.
Pro Hac Vice                        By: Teresa M. Hendricks (P46500)

31

Attorney for Plaintiffs
 14 W. Eric St.
Chicago, IL 60610
(312) 751-1170

Attorney for Plaintiffs
648 Monroe NW Suite 318
Grand Rapids, MI 49503
(616) 454-5055



## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial.

MICHIGAN MIGRANT LEGAL
ASSISTANCE PROJECT, INC.

Dated: _8 / 27 / 02_

By: _Paul Strauss_ by permission     By: _Teresa M. Hendricks_
Miner, Barnhill & Galland _Hendricks_      MICHIGAN MIGRANT LEGAL
By: Paul Strauss                            ASSISTANCE PROJECT, INC.
Pro Hac Vice                                By: Teresa M. Hendricks (P46500)
Attorney for Plaintiffs                     Attorney for Plaintiffs
14 W. Eric St.                              648 Monroe NW Suite 318
Chicago, IL 60610                           Grand Rapids, MI 49503
(312) 751-1170                              (616) 454-5055

32